**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**CINERGY COMMUNICATIONS COMPANY,**)
)
**Plaintiff,** )
) **CIVIL ACTION**
**v.** )
) **No. 05-2401-KHV**
**SBC COMMUNICATIONS, INC., and** )
**INDIANA BELL TELEPHONE CO.,** )
**d/b/a/ Ameritech Indiana,** )
)
**Defendants.** )
_____)

**MEMORANDUM AND ORDER**

Cinergy Communications Company ("Cinergy") brings suit against SBC Communications, Inc. and Indiana Bell, alleging that defendants unfairly charged it for services. Plaintiff seeks restitution and declaratory relief. This matter comes before the Court on Defendants' Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. #4) filed October 12, 2005. For reasons set forth below, the Court finds that the motion should be overruled.

Facts

Plaintiff's complaint alleges the following facts:

Cinergy is a Kentucky corporation with its principal place of business in Overland Park, Kansas. Cinergy provides local exchange and other telecommunications facilities and services in several states, including Kentucky, Tennessee and Indiana. Cinergy manages and monitors these telecommunications services from its executive offices in Overland Park, Kansas. Cinergy is a wholly owned subsidiary of Q Comm Corporation.

SBC Communications, Inc. ("SBC") is a Delaware corporation with its principal place of business in San Antonio, Texas. SBC provides telephone communications nationwide, including in Kansas and Indiana. Indiana Bell Telephone Company is an Indiana corporation with its principal place of business in Indiana. Indiana Bell is a wholly owned subsidiary of SBC.

On November 13, 2000, Cinergy and SBC reached an interconnection agreement which the Indiana Utility Regulatory Commission approved on February 9, 2001. The agreement did not include provisions for Alternate Billed Services ("ABS"), which allow end-user customers to bill calls to a telephone number other than the originating line.[1] Despite the lack of an agreement as to ABS, SBC began to charge Cinergy for the cost of ABS calls by SBC customers in July of 2002. Cinergy prepared checks for ABS charges in its Kansas office and sent them to SBC. In July of 2004, Cinergy notified SBC that it disputed the ABS charges. Despite ongoing communications between SBC and Cinergy (from its home office in Kansas), the parties have not resolved the issue of ABS charges.

In September of 2004, SBC began to credit Cinergy $.03 for each reported ABS charge instead of deleting the actual cost of the ABS charge from its billing. Cinergy notified SBC that the $.03 credit was not acceptable, and demanded that SBC stop billing Cinergy for ABS charges by customers of SBC. Cinergy has continued to protest the ABS charges.

On September 16, 2005, Cinergy filed suit seeking a declaratory judgment as to the parties' agreement, restitution of $802,577.90 and punitive damages of $5,000,000.00.

By affidavit defendants present the following facts:

---

[1]  ABS charges include collect and third-number calls.

SBC and Indiana Bell have no offices in Kansas and no employees who reside or work in Kansas. SBC and Indiana Bell do not provide or sell telecommunications services to any Kansas resident. SBC and Indiana Bell do not own telecommunication network facilities or any other property in Kansas. SBC and Indiana Bell are not authorized to do business in Kansas and do not do business in Kansas.[2]

Plaintiff presents by affidavit and record submissions the following facts:

SBC represents on its web sites and in its 2004 SEC report that SBC operates in Kansas. SBC's web site refers to "SBC-Kansas." SBC-Kansas is no longer registered by the Kansas Secretary of State, which notes that SBC-Kansas "has been merged out of existence." SBC's website states that companies formerly known as Southwestern Bell are now part of the "SBC family."

## **Analysis**

Defendants assert that this Court must dismiss plaintiff's claims for lack of personal jurisdiction. See Rule 12(b)(2), Fed. R. Civ. P. Specifically, defendants argue that the Kansas long-arm statute does not confer personal jurisdiction over them and that exercising personal jurisdiction would violate due process. The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., based on affidavits and other written material. See Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984). If the Court so chooses, plaintiff must make only a prima facie showing of jurisdiction to avoid dismissal. See

---

[2] SBC and Indiana Bell do not dispute plaintiff's assertion that Indiana Bell is a subsidiary of SBC Communications which is under the "complete control and direction" of SBC.

Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). Of course, plaintiff eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. Until such a hearing is held, a prima facie showing suffices, notwithstanding any contrary presentation by the moving party. See Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). If defendant challenges the jurisdictional allegations, plaintiff must support the jurisdictional allegations in a complaint by competent proof of the supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). All factual disputes are resolved in plaintiff's favor. See id. Further, the allegations in the complaint must be taken as true to the extent that they are uncontroverted by defendant's affidavits. Intercon, Inc. v. Bell Atl. Internet Solutions, 205 F.3d 1244, 1247 (10th Cir. 2000) (only well pled facts, as distinguished from conclusory allegations, accepted as true).

The Court applies a two-part test to analyze Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction over a nonresident defendant. First, defendant's conduct must fall within a provision of the Kansas long-arm statute, K.S.A. § 60-308. Kansas courts construe the long-arm statute liberally to assert personal jurisdiction over nonresident defendants to the full extent permitted by the limitations of due process. Volt Delta Res. Inc. v. Devine, 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987). Second, defendant must have sufficient minimum contacts with Kansas to satisfy the constitutional guarantee of due process. See Equifax Serv., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990); see World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (court may exercise personal jurisdiction over nonresident defendant only so long as "minimum contacts" exist between defendant and forum state).

I.      The Kansas Long-Arm Statute

Defendants argue that this Court has no authority to exercise personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60-308(b). Plaintiff asserts that personal jurisdiction is proper under subsections (1), (2), (7) and (11). Although plaintiff does not rely on subsection (5), it provides a basis for personal jurisdiction over defendants. K.S.A. § 60-308)(b) provides in part as follows:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (1) Transaction of any business within this state;
>
> (2) commission of a tortious act within this state; * * *
>
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state; ***
>
> (7) causing to persons or property within this state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury either (A) the defendant was engaged in solicitation or service activities within this state; or (B) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use [and] * * *
>
> (11) entering into an express or implied arrangement, whether by contract, tariff or otherwise, with a corporation or partnership, either general or limited, residing or doing business in this state under which such corporation or partnership has supplied transportation services, or communication services or equipment, including, without limitation, telephonic communication services, for a business or commercial user where the services supplied to such user are managed, operated or monitored within the state of Kansas, provided that such person is put on reasonable notice that arranging or continuing such transportation services or telecommunication services may result in the extension of jurisdiction pursuant to this section.

Defendants assert that the Court lacks personal jurisdiction because SBC and Indiana Bell do not have offices in Kansas, do not provide or sell services to Kansas residents and are not authorized to

do business in Kansas. Nevertheless, defendants' activities fall within subsection (b)(5) of the long-arm statute. SBC and Indiana Bell entered into an interconnection agreement with Cinergy, a resident of Kansas. Cinergy manages and monitors its telecommunications services from Kansas and the contract therefore was performed at least "in part" in Kansas. For purposes of this motion, the agreement satisfies the requirements of subsection (b)(5).

Subsection (b)(11) also appears to encompass defendants' conduct. SBC and Indiana Bell entered into the interconnection agreement with Cinergy, which does business in Kansas. The interconnection agreement provides communication services. SBC and Indiana Bell are business or commercial users. Cinergy manages the services under the interconnection agreement from Kansas. Finally, SBC and Indiana Bell would appear to have been on reasonable notice that this transaction could result in jurisdiction within Kansas. Cinergy sent numerous letters and payments and made phone calls to defendants from Kansas, thus placing SBC and Indiana Bell on notice that the business relationship could result in extension of jurisdiction based on the Kansas long-arm statute. Cf. Sprint Commc'ns Co. v. Mushahada Int'l USA, Inc., Case No. 05-2168-KHV, 2005 WL 1842845 (D. Kan. July 29, 2005) (invoices to defendant included notice that defendant was subject to jurisdiction in Kansas under subsection (b)(11)). The Court need not decide whether defendants' conduct falls within subsection (b)(11), however, because it so clearly falls within subsection (b)(5).

II.   Due Process

The Court must determine whether the exercise of jurisdiction satisfies constitutional due process requirements. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Due process requires "minimum contacts" between the nonresident defendant and the forum state. Id. This standard may be satisfied in one of two ways. Specific jurisdiction exists over a matter in the forum

state if defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). General jurisdiction exists if "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." Trierweiler, 90 F.3d at 1533 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n.9 (1984)). In either case, defendant must reasonably be able to anticipate being haled into court in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Also, jurisdiction in the particular case must be reasonable so as not to offend traditional notions of fair play and substantial justice. See World-Wide Volkswagen, 444 U.S. at 292.

A.  General Jurisdiction

Defendants contend that the exercise of personal jurisdiction by this Court cannot satisfy due process. Specifically, defendants note that they have no offices or employees in Kansas, and do not provide or sell telecommunications services to any Kansas resident. Plaintiff argues that the Court can maintain general jurisdiction over SBC and its subsidiary, Indiana Bell, because SBC represents on its web sites and in its 2004 SEC report that it operates in Kansas.[3]

The existence of a relationship between a subsidiary corporation and its parent or holding company is highly probative of the quality and nature of the nonresident's contact with the forum.

---

[3] Further, SBC's web site refers to "SBC-Kansas." SBC-Kansas is no longer registered by the Kansas Secretary of State, because it "has been merged out of existence." SBC's website states that companies formerly known as Southwestern Bell are now part of the "SBC family."

Hoffman v. United Telecomm., 575 F. Supp. 1463, 1471 (D. Kan. 1983). The activity in the forum of a corporation that either owns or is owned by a nonresident corporation generally demonstrates affiliation of the nonresident with the forum. Id. (citing Energy Reserves Group, Inc., v. Superior Oil Co., 460 F. Supp 483, 508 (D. Kan. 1978)).

In Hoffman, this Court found that the existence of a relationship between an in-state corporation and out-of-state subsidiary was a beginning point in the jurisdictional analysis. The Court then analyzed the degree of control from the forum corporation, and the flow of benefits or funds to and from the forum. The ultimate inquiry, of course, remains whether "defendant may be said to have purposefully availed itself of the benefits and protections of the forum." 575 F. Supp. at 1472.

In response to defendants' motion to dismiss, plaintiff does not offer any facts regarding the details of the alleged relationship between the parent and the subsidiary. Although plaintiff alleges that SBC controls the actions of SBC-Kansas, it offers no facts to counter defendants' affidavits that SBC does not assert any control over the actions of SBC-Kansas. Cf. Id. (existence of a relationship between affiliated corporation may render personal jurisdiction constitutional if relevant factors, including convenience and orderly administration of justice balance in that direction). Cinergy has not offered facts to establish the type of continuous and systematic contacts required for general jurisdiction.

B.     Specific Jurisdiction

Although Cinergy primarily argues that the Court can exercise general jurisdiction, it presents facts which support the exercise of specific jurisdiction. Cinergy notes that defendants entered a

-8-

contract with Cinergy, which has its executive office in Kansas. Defendants refused to reimburse Cinergy for the unauthorized charges under the interconnection agreement. Defendants sent letters and made phone calls in this regard to Cinergy's Kansas office and accepted payments from Cinergy's Kansas office.

Kansas may assert specific jurisdiction over out-of-state defendants if they "purposefully directed . . . activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 472. When a contract dispute is the basis for specific jurisdiction, a court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Equifax, 905 F.2d at 1358 (citation omitted). To decide specific jurisdiction, the Tenth Circuit applies a three-part test:

> (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp.2d 1074, 1078 (D. Kan. 1998) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1419 (10th Cir. 1988)).

The following factors support the exercise of specific jurisdiction:

1. Defendants entered into a contract with Cinergy, a Kansas resident.

2. Cinergy managed and monitored services under the contract from its office in Kansas. See Pehr v. Sunbeam Plastics Corp., 874 F. Supp. 317, 321 (D. Kan. 1995) (defendant's knowledge that contract would be partially performed in Kansas favors finding of minimum contacts).

3. Defendants sent letters and invoices and made phone calls to Cinergy in Kansas.

      4.      Defendants accepted payment sent from Cinergy in Kansas.

Based on these factors, defendants should reasonably have anticipated that if a dispute arose under the interconnection agreement, they could be haled into court in Kansas. See Burger King, 471 U.S. at 474. Jurisdiction in this case is reasonable and does not offend traditional notions of fair play and substantial justice. See World-Wide Volkswagen, 444 U.S. at 292. At this stage, plaintiff has easily met its burden to show a prima facie case for jurisdiction. The Court therefore overrules defendants' motion to dismiss for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. #4) filed October 12, 2005 be and hereby is **OVERRULED.**

Dated this 6th day of June, 2006, at Kansas City, Kansas.

                                            s/ Kathryn H. Vratil
                                            KATHRYN H. VRATIL
                                            United States District Judge